UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 06-30781 (LMW) |
| | ) | | |
| PAUL A. LONGO, | ) | CHAPTER | 7 |
| | ) | | |
| DEBTOR. | ) | DOC. I.D. NOS. | 26, 30 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**<u>APPEARANCES</u>**

B. Amon James, Esq.                                          Attorney for the Movant
Holley L. Claiborn, Esq.                                      United States Trustee
Office of the United States Trustee
One Century Tower
265 Church Street, Suite 1103
New Haven, CT 06510

F. Woodward Lewis, Jr., Esq.                           Attorney for the Debtor
Law Offices of F. Woodward
 Lewis, Jr.
439 Main Street
P.O. Box 4656
Yalesville, CT 06492

**MEMORANDUM AND ORDER RE: UNITED STATES TRUSTEE'S MOTION
TO DISMISS THE DEBTOR'S CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(b)(2)**

Lorraine Murphy Weil, United States Bankruptcy Judge

This case presents the question of whether payments on secured debt are proper deductions under the "means test" of Bankruptcy Code § 707(b)(2)(A) when the debtor has filed a statement of his intent to surrender the collateral securing that debt. Before the court are: (1) United States Trustee's (the "UST") Motion To Dismiss the Debtor's Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(2) (Doc. I.D. No. 26, the "Motion");[1] and (2) the above-referenced debtor's (the "Debtor") objection thereto

---

[1] References herein to the docket of this case appear in the following form: "Doc. I.D. No. ____."

(Doc. I.D. No. 30, the "Objection"). This court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of the District Court (Daly, C.J.).[2]

## I. BACKGROUND

The Debtor commenced this case by a chapter 7 petition (the "Petition") filed on June 1, 2006 (the "Petition Date"). Bankruptcy schedules and statements were filed with the Petition. (*See* Doc. I.D. No. 1.) Those schedules disclose the following secured debt (the "Secured Debt"): (a) first and second mortgages (joint with codebtor) on the Debtor's residence (the "Residence"); (b) a mortgage (joint with codebtor) on a Tempus Resorts Timeshare interest (the "Timeshare"); and (c) a secured loan with respect to a 2005 Ford Taurus. (*See id.*) The Motion states that the Debtor's Statement of Intention proposes to surrender both the Residence and the Timeshare.[3] On July 27, 2006, the Debtor filed a (Second) Amended Statement of Current Monthly Income and Means Test Calculation (Doc. I.D. No. 25). In line 42 of that document, the Debtor claimed a deduction (the "Proposed Deduction") under Bankruptcy Code § 707(b)(2)(A)(iii) with respect to all the Secured Debt.

The UST filed the Motion on July 31, 2006. The Motion asserts that, because the Residence and the Timeshare were proposed to be surrendered, the Proposed Deduction is improper to the extent that it relates to Secured Debt with respect to those properties. Accordingly, the UST argues, a

---

[2] That order referred to the "Bankruptcy Judges for this District" "all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C. . . . ."

[3] That statement appears to be contrary to the record in that the only Statement of Intention on file proposes to surrender the Residence only. (*See* Doc. I.D. No. 1.) However, the Debtor does not dispute the referenced statement. Accordingly, because it makes no difference to the result, the court will proceed as if the referenced statement were accurate and as if a conforming Statement of Intention had been filed with the Petition.

"presum[ption of] abuse" exists under Section 707(b)(2)(A) and such presumption not having been rebutted by the Debtor (*see* 11 U.S.C. § 707(b)(2)(B)), this case must be dismissed (or converted to a chapter 13 case with the Debtor's consent).  In the Objection, the Debtor argues that the Proposed Deduction is proper notwithstanding the proposed surrender of the Residence and the Timeshare.

A non-evidentiary hearing on the Motion and the Objection was held on August 30, 2006.  At that hearing the parties agreed that, if the Proposed Deduction is proper, the Motion must be denied (and the Objection sustained) and if the Deduction is improper, the Motion must be granted (and the Objection overruled).  It is undisputed that the contracts relating to the Secured Debt all were extant as of the Petition Date and that the Debtor had not "surrendered" any of the collateral prepetition.

## II. ANALYSIS

Section 707(b) provides in relevant part as follows:

>   (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter . . . .
>
>       (2)(A)(i)   In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of–
>
>           (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
>
>           (II) $10,000 [the "Means Test"].
>                           . . .
>       (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of–

    (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

    (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60 [the "Deduction"].

. . .

 (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

. . .

 (iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of –

    (I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or

    (II) $10,000.

(C) As part of the schedule of current income and expenditures required under section 521, the debtor shall include a statement of the debtor's current monthly income, and the calculations that determine whether a presumption arises under subparagraph (A)(i), that show how each such amount is calculated.

 (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C.A. § 707(b) (West 2007).[4] The Means Test functions as a "switching device" to steer cases either into Section 707(b)(2)(B) (where the debtor bears the burden of proving "special circumstances" to avoid dismissal (or conversion to a reorganization chapter on consent)) or (at the non-debtor movant's option) into Section 707(b)(3) (where the movant bears the burden of showing "abuse" either because of a bad faith filing or under the "totality of the circumstances" test). *See, e.g., In re Hartwick*, No. 06-10749-JMD, 2007 WL 518617 (Bankr. D.N.H. Feb. 12, 2007)[5]; *In re Walker*, No. 05-15010-WHD, 2006 WL 1314125 (Bankr. N.D. Ga. May 1, 2006).[6]

---

[4]    Section 707(b)(3) is subject to the so-called "safe harbor" of Section 707(b)(6) which limits the persons who may file a Section 707(b)(3) motion when the debtor has "median income" below a certain level. *See* 11 U.S.C. § 707(b)(6).

[5]
> The major objective of Congress in adding the [M]eans [T]est in § 707(b)(2) was to limit judicial discretion from the process of determining abuse by providing an objective standard for establishing a presumption of abuse. However, Congress did not remove the ability of bankruptcy courts to consider circumstances, including postpetition developments, in determining abuse. On the contrary, Congress expressly incorporated the formerly judicially created totality of the circumstances test which permits consideration of circumstances both preceding and following the filing of the petition.

*Id.* at *4 (citation omitted).

[6]
> [T]he Court also notes that, whether the debtor passes or fails the [M]eans [T]est is relevant only to the question of whether the U.S. Trustee will benefit from a presumption of abuse. In cases in which the presumption of abuse does not arise or is rebutted, the U.S. Trustee may pursue dismissal of a debtor's case under Section 707(b)(3), which provides that the court may consider whether the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

*Id.* at *8 (alteration in original; internal quotation marks omitted). In this case the UST has kept her options open by (from time to time) obtaining orders continuing the date by which a Section 707(b)(3) objection may be filed.

Some courts hold that, if the relevant contractual secured debt is extant on the petition date, the Deduction properly is taken to the extent that the schedule of payments annexed to (or provided for by) the relevant contract provides for payments during the statutory 60-month period even if the debtor proposes to surrender the collateral postpetition (or even already has surrendered it postpetition). *See, e.g., Hartwick, supra*; *In re Sorrell,* No. 06-31720, 2007 WL 211276 (Bankr. S.D. Ohio Jan. 26, 2007); *In re Randle,* No. 06 B 05929, 2006 WL 3734351 (Bankr. N.D. Ill. Dec. 19, 2006); *Walker, supra*. Other courts allow the Deduction only if it appears that the debtor actually will be making the "scheduled" payments postpetition. *See, e.g., In re Harris,* 353 B.R. 304 (Bankr. E.D. Okla. 2006); *In re Skaggs,* 349 B.R. 594 (Bankr. E.D. Mo. 2006).

This court agrees with those courts that interpret the term "scheduled" in Section 707(b)(2)(A)(iii) to mean something substantially equivalent to "scheduled under" or "provided for by" the referenced contract. Those courts reject the contrary interpretation that the statutory term "scheduled" is an allusion to the debtor's bankruptcy schedules. *See, e.g., Randle*, 2006 WL 3734351, at *5 ("[T]he context of this provision . . . clearly requires the debtor to list payments 'scheduled' under secured debt instruments, virtually all of which call for installment payments that are scheduled to be paid on a monthly basis."); *Sorrell*, 2007 WL 211276, at *15 ("[T]he words 'scheduled as'. . . do not refer to the bankruptcy schedules."); *Walker,* 2006 WL 1314125, at *3.[7] *See also In re Mundy*, No. 1-

---

[7] Webster's Dictionary defines the word "schedule" as "to plan for a certain date." The common meaning of "as contractually due" is that the debtor is legally obligated under the contract . . . to make a payment in a certain amount . . . for a set number of months into the future. Accordingly, payments that are "scheduled as contractually due" are those payments that the debtor will be required to make on certain dates in the future under the contract. These payments are limited by additional statutory language to only those payments required in each of the sixty months after the petition is filed. For example, the debtor may have a car loan with a remaining payment term of only two years, or a

06-BK-00875MDF, 2007 WL 620971, at *4 (Bankr. M.D. Pa. March 1, 2007) ("To interpret the common verb 'scheduled' as a reference to the proper noun 'Schedule' as used in the Bankruptcy Code is a grammatical exercise too complex and strenuous to be considered 'plain.'").

This court also agrees with those courts that hold that the Section 707(b)(2)(A)(iii) calculation is (in all relevant senses) intended to be a "snapshot" of the state of matters as of the petition date. *See, e.g., In re Haar,* No. 06-31270, 2007 WL 521221 (Bankr. N.D. Ohio Feb. 20, 2007);[8] *Hartwick*, 2007 WL 518617, at *4 ("[C]onsideration of postpetition developments in the application of the [M]eans [T]est would be contrary to Congressional intent . . . ."); *Sorrell*, 2007 WL 211276, at *16 ("Section 707(b)(2)(A)(iii)(I) does not reference any post-petition eventuality, which would alter the expense amount for purposes of the § 707(b)(2) formula, to adjust that calculation, including an intention to surrender secured property."); *Randle*, 2006 WL 3734351, at *5 ("This provision calls for a snapshot of the debtor's obligations on the date of the petition."); *Walker*, 2006 WL 1314125, at *6 ("Congress

---

> mortgage with a remaining payment term of twenty years. The debtor would include only the remaining twenty-four months of the car loan payments, but would add all sixty months of the mortgage payments in order to calculate the average monthly payment on secured debt.

*Id.* (citation omitted).

[8] Such a reading conforms to the general tenet in bankruptcy that circumstances are to be gauged from the petition date, with the Bankruptcy Code replete with examples where any deviation therefrom is made explicit. *See, e.g.,* 11 U.S.C. § 541(a)(5) (allowing a limited class of postpetition interests in property acquired by the debtor to become property of the estate); 11 U.S.C. § 503 (allowing an administrative expense against the estate for certain services that are performed postpetition).

*Id.* at *7.

intended for the [M]eans [T]est to be applied based on the facts in existence at the time of the filing, without reference to what the debtor will do in the future.").

Here the Debtor proposes the postpetition surrender of the relevant collateral. A surrender of collateral proposed in a Statement of Intention filed with the petition does not change the fact that the relevant contractual secured debt still was extant as of the petition date. That is because a Statement of Intention is not a self-effectuating document. It is merely what it purports to be: a statement of intent to surrender in the future, not an actual surrender. *Cf.* 11 U.S.C. § 362(h) (termination of the automatic stay when, *inter alia,* the debtor has failed timely to effectuate his stated intent to surrender personal property collateral).[9] Thus, the Petition Date "snapshot" here properly includes all of the Secured Debt.[10]

---

[9] For the purposes of this opinion, the court assumes (but does not decide) that a "surrender" of collateral satisfies the relevant secured debt.

[10] The court has considered the remaining arguments of the UST and finds them to be unpersuasive.

**III.    CONCLUSION**

The Proposed Deduction is proper.  Accordingly, the Motion is denied and the Objection is sustained (both without prejudice to the UST's right timely to file a motion under Bankruptcy Code § 707(b)(3)).  It is **SO ORDERED.**

Dated: March 19, 2007                                                         BY THE COURT

                                                                                                    Lorraine Murphy Weil
                                                                                                    United States Bankruptcy Judge